**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELLEN HEINE,<br><br>        Plaintiff,<br><br>v.<br><br>TOWNSHIP OF CEDAR GROVE, et al.,<br><br>        Defendants. | Civil Action No. 18-0441 (ES) (CLW)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

*Pro se* Plaintiff Ellen Heine ("Plaintiff") brings this action against the Township of Cedar Grove ("Cedar Grove"), the Essex County Board of Chosen Freeholders, the Attorney General of the State of New Jersey, and John Does 1 to 20 (collectively "Defendants").[1] (D.E. No. 1, Complaint ("Compl")). Before the Court is Cedar Grove's motion to dismiss the Complaint. (D.E. No. 7). The Court has considered the parties' submissions and decides the matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78(b). For the following reasons the Court GRANTS Cedar Grove's motion and dismisses the Complaint.

**I. Factual Background**

The Court notes that the allegations in the Complaint provide a confusing background that attempts to intertwine various acts undertaken by several different entities and individuals, some of whom are not named parties in this action. (*See generally* Compl.). In light of Plaintiff's *pro se* status, the Court gleans, as best it can, the following facts from the Complaint. *See Erickson v.*

---

[1]     Initially, the Complaint also named the Passaic County Prosecutor as a defendant (*see* D.E. No. 1), but Plaintiff voluntarily dismissed the Passaic County Prosecutor on May 18, 2018. (D.E. Nos. 10 & 13).

*Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.").[2]

Plaintiff alleges that she grew up in Cedar Grove, where she resided until she graduated from High School. (Compl. ¶¶ 1 & 41). She explains that while attending school at Cedar Grove she never received guidance about careers in construction or ironwork, despite receiving high scores in visual-spatial aptitude on standardized tests. (*Id.* ¶¶ 2 & 42). She states that after studying art education at Montclair State Teacher's College, she became certified to teach art and welding. (*Id.* ¶¶ 3 & 43). In 1999, she entered an apprentice program with Local 40 Ironworkers, and has since participated in construction welding of bridges and buildings. (*Id.* ¶ 6).

Plaintiff states that in 1974 she bought a home in Paterson, which had been previously used as a wood turning factory. (*Id.* ¶ 4). This property is zoned as "mixed-use" and Paterson's zoning scheme allows "artists" to reside "in commercial and mixed-use zones." (*Id.* ¶¶ 5 & 9). It appears that Plaintiff kept a supply of iron in the backyard of her property, which she alleges "was not a zoning violation and the property was properly screened." (*Id.* ¶ 9). Plaintiff alleges that Paterson's zoning scheme is unlike "the exclusionary zoning scheme for Cedar Grove," which "has never offered housing opportunities for individuals like [Plaintiff]." (*Id.* ¶ 22).

Plaintiff also asserts that she has been involved in activism to stop deer hunting in the area. (*Id.* ¶ 16). She states that in 2012 she, her friend Ann R. Schildknecht, and an individual named "English" brought an action to stop deer hunting "in the reservations at South Montclair, Eagle Rock, and Hilltop" and subsequently appealed an adverse decision in 2014. (*Id.*). Plaintiff alleges that Essex County's motivation for removing the deer "was so that the land could be used for

---

[2] Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

development of high density residences," particularly around the Cedar Grove area where the zoning scheme is "exclusionary." (*Id.*).

In November 2013, Plaintiff was arrested and charged for trespassing on a condemned property located at 120 Undercliff Road, Montclair, New Jersey, which was owned by Schildknecht.[3] (*Id.* ¶¶ 17-19). Between December 16 and 22, 2015, Plaintiff was tried in Cedar Grove Municipal Court,[4] where she was found guilty of the disorderly person offense of trespass.[5] (*Id.* ¶ 7). Plaintiff received a suspended sentence pending completion of two years of probation. (*Id.*).

Plaintiff asserts that her present claims arise because sometime after she was sentenced, she was charged with violating the probation. (*Id.* ¶¶ 8, 21 & 26; D.E. No. 12 at 2 ("This complaint arose out of a 'Violation of Probation' hearing that occurred in September of 2016. . . .")). In September 2016, she attended a violation of probation hearing at the Cedar Grove Municipal Court. (*Id.* ¶ 8). Plaintiff asserts four counts, raising claims under 42 U.S.C. §§ 1983 and 1985 for alleged violations of her Fifth and Eighth Amendment rights. (*See id.* ¶¶ 24–50).

Count I asserts that Defendants violated Plaintiff's Fifth and Eighth Amendment rights

---

[3]  Plaintiff and Schildknecht have brought several complaints against Montclair and other defendants alleging constitutional violations as a result of the closure of this property, and more recently, as a result of Plaintiff's charge and subsequent prosecution for trespassing in that property. *See* (Civil Action No. 17-12529 (ES)(JAD), D.E. No. 1); *Heine v. Dir. of Codes & Standards*, No. 15-8210, 2017 WL 3981135 (D.N.J. Sept. 11, 2017); *Fabics v. City of New Brunswick*, No. 13-6025, 2015 WL 5167153 (D.N.J. Sept. 3, 2015), *aff'd sub nom. Estate of Fabics v. City of New Brunswick & its Agents*, 674 F. App'x 206 (3d Cir. 2016); *Fabics v. City of New Brunswick*, No. 14-2202, 2015 WL 10936119 (D.N.J. Jan. 15, 2015), *aff'd*, 629 F. App'x 196 (3d Cir. 2015); *Schildknecht v. Twp. of Montclair*, No. 13-7228, 2014 WL 835790 (D.N.J. Mar. 4, 2014).

The instant Complaint again raises various allegations against Montclair and insinuates that Montclair took those actions against Plaintiff and Schildknecht in retaliation for their activism to stop deer hunting. (*See* Compl. ¶ 33). However, Montclair is not a named party in this suit, and in any event, Plaintiff would likely be barred from raising such claims against Montclair.

[4]  The case was initiated in the Montclair Municipal Court, but was subsequently transferred to Cedar Grove. (*See* D.E. No. 12 at 2).

[5]  According to Cedar Grove, Plaintiff was charged with defiant trespassing under N.J.S.A. 2C:18-3, which is a disorderly persons offense. (D.E. No. 7-1 at 5, n.1).

because Defendants failed to consider available evidence and public records when they charged her with violating probation. (*See id.* ¶¶ 24–34). Plaintiff states that "the Passaic County Prosecutor's office accused [Plaintiff] of improperly using [her] Paterson address for home that was really a 'scrap yard,'" apparently because of her supply of iron in her backyard. (*Id.* ¶ 27). She states that "these officials, though their office was located in Paterson, did not consider that the zoning in Paterson allowed for artist in residence in commercial property." (*Id.*). She also states that the officials did not consider that Plaintiff was a member of Local 40 Ironworkers, "which would explain why she had iron in her backyard." (*Id.*).

Moreover, Plaintiff asserts that at the violation of probation hearing the judge determined that Plaintiff's address was commercial and "would not allow supervised probation" at this address. (*Id.* ¶ 21). She alleges that the Judge, who "had constant exposure to the exclusionary zoning ordinances in Cedar Grove . . . . was unable to fathom that there may be other municipalities in the area . . . that may have a more diverse and inclusive zoning scheme." (*Id.* ¶ 28). Plaintiff also states that the judge accused her "address production as 'another one of your scams'" even though a review of publicly available information "showed that [Plaintiff] had a long time connection to the address in question." (*Id.* ¶ 29). Thus, the judge "demanded another address or [Plaintiff] would not be allowed to participate in probation, but would have to go to jail." (*Id.* ¶ 10).

She asserts that she was "at risk of incarceration for these uninformed evaluations of the Passaic County Prosecutor and the Cedar Grove Municipal Court Judge" (*id.* ¶ 30) thus, "[Plaintiff] had to move to another home within the City to be in compliance" (*id.* ¶ 10). As a result, Plaintiff asserts that this was a violation of her Eighth Amendment right because the "this misinformation could result in a term of incarceration." (*Id.* ¶ 30). She also claims that the judge's failure to

recognize her Paterson address as a home was a violation of her Fifth Amendment right. (*Id.* ¶ 29).

Count II asserts that Defendants have "deprived [Plaintiff] of her use of property" in violation of her Fifth Amendment rights. (*Id.* ¶¶ 35–38). She alleges that the Essex County Board "through their Construction Board of Appeals and the Legal Counsel have supported the closure of the home at 120 Undercliff Road in Montclair" and now "[Plaintiff] faces incarceration" for "an alleged trespass." (*Id.* ¶ 36). She asserts that Cedar Grove violated her Fifth Amendment rights because the Cedar Grove Municipal Court has condoned and supported this inequitable situation. (*Id.* ¶ 37). Specifically, she alleges that the municipal court has upheld "Montclair's custody and control over the property at 120 Undercliff Road, even though a published appellate division opinion states that a municipality must have possession of a property prior to charging anyone for trespass on the property." (*Id.*).

Count III alleges that Cedar Grove deprived Plaintiff of her "Fifth Amendment Constitutional right of property as well as the international concept of Habitat." (*Id.* ¶ 40). She alleges that Cedar Grove's zoning scheme provides no opportunities to "diversified adults" (*id.* ¶ 41), and then re-alleges how Cedar Grove schools did not provide her with guidance regarding careers in welding or construction, and she ultimately bought a home in Paterson (*id.* ¶¶ 41–44). She also alleges that:

> The United Nations symposium of Habitat 2 in Istanbul, Turkey developed a functional definition for a "habitat." It is a place where you can grow to be all you can be. [Plaintiff] grew up and was educated in the Township of Cedar Grove. Scholastic testing demonstrated an aptitude for art and construction. However, the exclusionary zoning scheme for Cedar Grove has never offered housing opportunities for individuals like [Plaintiff]. Additionally the individuals that represent and interpret municipal ordinances and policies such as the municipal court officials do not consider that there should be any housing for individuals such as [Plaintiff], either in town or out of town. This creates a situation where the individual is excluded from her own surroundings. In essence the municipality has

no ability to offer Habitat to those residents that it considers do not fit in. This is a complete loss of the Fifth Amendment Constitutional right of property.

(*Id.* ¶ 46).

Finally, Count IV alleges that the "Defendants individually and their efforts together have deprived [Plaintiff] of her use of property" in violation of the Fifth Amendment. (*Id.* ¶¶ 47–50). She alleges that Cedar Grove's development has been exclusionary in nature, and that new developments have the same exclusionary standard. (*Id.* ¶¶ 48 & 50). She also alleges that development at and around Hilltop Reservation has caused displacement of wildlife, which in turn has "caused damage to the surrounding area residents' property." (*Id.* ¶ 49).

On January 10, 2018, Plaintiff initiated the instant lawsuit against Defendants. (*See id.*). On May 18, 2018, Plaintiff voluntarily dismissed the claims against the Passaic County Prosecutor. (D.E. Nos. 10 & 13). Of the remaining Defendants, it appears that only Cedar Grove was served with the Complaint.

## II. Legal Standard

To state a claim a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Neither a claimant's "blanket assertion[s]" of a right to relief nor "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" satisfy Rule 8(a)(2)'s requirements. *Twombly*, 550 U.S. at 556 n.3.

Rule 8(a)(2)'s pleading standard also requires that a complaint set forth the plaintiff's claims with enough specificity as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 570. The complaint must contain "sufficient facts to put the proper defendants on notice so they can frame an answer" to the plaintiff's allegations. *Dist. Council 47, Am. Fed'n of State, Cty. & Mun. Emps., AFL–CIO by Cronin v. Bradley*, 795 F.2d 310, 315 (3d Cir. 1986); *see also Pushkin v. Nussbaum*, No. 12–0324, 2013 WL 1792501, at *4 (D.N.J. Apr. 25, 2013) ("[T]he Court cannot expect the Defendants to defend against claims that are not clearly and specifically alleged.").

In assessing a Rule 12(b)(6), or as here, a 12(c), motion, "all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference drawn therefrom." *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). But a reviewing court does not accept as true the complaint's legal conclusions. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions."). A court therefore must first separate a complaint's facts from its legal conclusions and then assess whether those facts raise a plausible claim for relief. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211–12 (3d Cir. 2009).

Relevant here, the Court notes that "[a] document filed *pro se* is to be liberally construed . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Yet there are limits to our procedural flexibility" when it comes to *pro se* litigants. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). *Pro se* litigants are not relieved of the obligation to plead enough factual matter to meet Rule 8(a)(2)'s plausibility standard. *See Franklin v. GMAC Mortg.*, 523 F. App'x 172, 172–73 (3d Cir. 2013); *D'Agostino v. CECOMRDEC*, No. 10-4558, 2010 WL

3719623, at *1 (D.N.J. Sept. 10, 2010) ("The Court need not, however, credit a *pro se* plaintiffs 'bald assertions' or 'legal conclusions.'"). A litigant's *pro se* status likewise does not relieve him or her of the obligation to "clearly and specifically" identify which claims pertain to which defendants. *Pushkin*, 2013 WL 1792501, at *4.

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.").

**III.     Discussion**

Cedar Grove raises a number of arguments, including that the claims are time-barred, that the claims are barred by the doctrines of res judicata and collateral estoppel, and that Plaintiff has failed to state a claim for which relief can be granted. (*See* D.E. No. 7-1). Given the confusing nature of Plaintiff's Complaint, for the reasons that follow the Court dismisses the Complaint *without prejudice* for failing to state a claim under Rule 12(b)(6). As a result, the Court does not reach Cedar Grove's alternative arguments at this time. Defendants are free to raise those defenses again, if appropriate, should Plaintiff file an amended complaint.

   **A.     1983 Claims**

Section 1983 imposes civil liability upon "any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the

Constitution or laws of the United States." *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004). "When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Mulholland v. Gov't Cty. of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013) (quoting *Beck v. Cty. of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)). In other words, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents," *Monell v. Dep't. of Soc. Servs. of the Cty. of N.Y.*, 436 U.S. 658, 694 (1978), but "it can be held responsible as an entity when the injury inflicted is permitted under its adopted policy or custom," *Beck*, 89 F.3d at 971.

"Policy is made when a decisionmaker [with] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Wright v. Cty. of Philadelphia*, 685 F. App'x 142, 146 (3d Cir. 2017). Government custom can be demonstrated "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir. 1990).

The Third Circuit Court of Appeals has identified three situations where acts of a government employee may be deemed to be the result of a policy or custom of the government entity:

> The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." *Bd. of the County Comm'rs. of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 417 (1997) (Souter, J., dissenting). The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." *Id.* Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious,

and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" *Id.* at 417–18 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)); *see also Berg v. Cty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (holding that plaintiff must "demonstrat[e] that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences").

*Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (footnote omitted).

Moreover, a plaintiff must also show that the unlawful "policy or custom was the proximate cause of the injuries suffered." *Bielevicz*, 915 F.2d at 850 (citing *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984)). There must be "a plausible nexus or affirmative link between the municipality's custom and the specific deprivation of constitutional rights at issue." *Id.*

Thus, to establish municipal liability the plaintiff must: 1) demonstrate the existence of an unlawful policy or custom, 2) that she suffered a deprivation of the rights, privileges, or immunities secured by the Constitution or laws of the United States, and 3) that the policy or custom was the proximate cause of the alleged deprivation. *See id.*;

Here, Plaintiff brings four *Monell* claims alleging violations of her Fifth Amendment right to property and Eighth Amendment right to be free from cruel and unusual punishments. (*See generally* Compl.). According to Plaintiff, the common thread linking these claims to Cedar Grove is the violation of probation hearing held at the Cedar Grove Municipal Court in September of 2016. (D.E. No. 12 at 2).[6] Particularly, Plaintiff claims that the municipal court judge forbade her from using her Paterson address as her home address for purposes of probation, and that this forced Plaintiff to either face incarceration or suffer non-use of the Paterson property. (*Id.* at 15–17). As best as this Court can discern, Plaintiff appears to argue that the municipal judge ignored Paterson's zoning scheme and was acting pursuant to Cedar Grove's historically "narrow" zoning scheme

---

[6] Although only Count I directly references the September 2016 violation of probation hearing, the other Counts incorporate by reference all prior allegations. (*See* Compl. ¶¶ 35, 39 & 47).

when he decided that Plaintiff's Paterson address was improper.[7] (*See* Compl. ¶ 28; *see also* D.E. No. 12 at 15–16 (arguing that the judge did not accept the Paterson address because "it did not conform with his notion of what constituted a home address" based on the narrow Cedar Grove zoning ordinances); *id.* at 5 (arguing that "the narrow-minded view of zoning which is prevalent in the Township of Cedar Grove could have caused [Plaintiff] to spend three months in jail")).

As stated in the Complaint, however, these *Monell* claims fail to allege the existence of an unlawful policy or custom which was the proximate cause of the claimed Fifth and Eighth Amendment violations. *See Bielevicz*, 915 F.2d at 850. That is, Plaintiff does not identify a policy or custom implemented by Cedar Grove that requires the municipal judge to only use the local ordinances, ignoring the ordinance of the municipality where the property in question is located. Nor has Plaintiff alleged that the judges at Cedar Grove Municipal Court have a common practice or custom of disregarding the relevant zoning ordinances of other municipalities, and that therefore, Cedar Grove has shown a deliberate indifference to the known or obvious consequences of such actions. Nor has Plaintiff alleged that the municipal judge's decision was the act of a policymaker who possess final authority to establish municipal policy in that area. *Cf. Williams v. Butler*, 863 F.2d 1398, 1402–03 (8th Cir. 1988) (holding the City of Little Rock liable for the unconstitutional discharge of a municipal court clerk by a municipal judge because the judge had been delegated "*carte blanche* authority" as to employment matters in his court, the judge's authority was not constrained by other final policymakers, and "[u]nlike the plaintiff in *Praprotnik*, [the court clerk] had no internal avenues of appeal available to challenge her termination").

---

[7] Plaintiff also conclusorily alleges that the judge acted pursuant to "complete indifference to the fact that women work in the trades." (D.E. No. 12 at 16). However, the Complaint provides no allegations to support this assertion. (*See generally* Compl.). While Plaintiff alleges that Cedar Grove schools did not counsel her, a women, on potential careers in construction, the Courts sees no connection between that childhood experience and how the municipal court judge made his determination more than 40 years later in September of 2016.

Rather, the crux of Plaintiff's Complaint is that the municipal judge applied the incorrect zoning ordinance when determining whether Plaintiff's Paterson address was proper for purposes of probation. (*See* Compl. ¶¶ 10, 21 & 28–30). However, an isolated mistake or mere negligence by some municipal agent is not enough to satisfy the *Monell* standard. *See Solomon v. Philadelphia Hous. Auth.*, 143 F. App'x 447, 457 (3d Cir. 2005); *Adams v. City of Atl. City*, 294 F. Supp. 3d 283, 301 (D.N.J. 2018). Therefore, Plaintiff has failed to allege a section 1983.

## B. 1985 Claim

In addition to asserting section 1983 *Monell* claims, the Complaint asserts in a single paragraph that Plaintiff also brings this action against Defendants pursuant to section 1985(3). (*See* Compl. ¶ 24). To properly allege a civil rights conspiracy under 42 U.S.C. § 1985(3), Plaintiff must allege the existence of "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Kirkland v. Dileo*, 581 F. App'x. 111, 118 (3d Cir. 2014) (quoting *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006)).

Plaintiff has failed to allege facts sufficient to support any of these elements. (*See generally* Compl.). While the Court is required to give Plaintiff's allegations "every favorable inference to be drawn therefrom," Plaintiff has failed to provide sufficient allegations for finding a cognizable claim. *See Malleus*, 641 F.3d at 563; *Iqbal*, 556 U.S. at 678. Even when combining the alleged actions by the various Defendants, Plaintiff's allegations do not provide grounds for finding the asserted conspiracy claim plausible. There is not even an allegation that the Defendants acted in concert, or that there was an understanding or agreement to conspire against Plaintiff, so as to

support the inference that a conspiracy occurred. *See Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183, 205 (3d Cir. 2008) ("To constitute a conspiracy, there must be a meeting of the minds."). Consequently, the Court dismisses Plaintiff's section 1985 claim *without prejudice*.

### C. Additional Grounds for Dismissal.

The Court notes that Counts II, III, and IV are also lacking in other areas, further supporting dismissal.

***Count II.*** Count II is premised on allegations that the Cedar Grove Municipal Court has upheld "Montclair's custody and control over the property at 120 Undercliff Road" despite "a published appellate division opinion" which requires that "a municipality must have possession of a property prior to charging anyone for trespass on the property." (Compl. ¶¶ 37). The Complaint, however, alleges only that the municipal court adjudicated Plaintiff's trial for trespass; it does not allege that in order to adjudicate Plaintiff's trespass charge the municipal court judge made a determination regarding "Montclair's custody and control over the property at 120 Undercliff Road." (*See generally* Compl.). Thus, the Complaint lacks sufficient factual matter to state a claim. *See Iqbal*, 556 U.S. at 678 (noting that the complaint must present "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Additionally, to the extent that Count II is based on the decision reached by the municipal court during Plaintiff's trial, the claim would be time-barred. The trial in question occurred on December 22, 2015 (Compl. ¶ 7), and Plaintiff initiated this action on January 10, 2018 (*see* Compl.)—more than two years after the alleged injury arose. As such, the claim in Count II would be time-barred under New Jersey's two-year statute of limitations for 1983 claims. *See Brown v.*

*Foley*, 810 F.2d 55, 56 (3d Cir. 1987) (holding that under New Jersey law, section 1983 claims have a two-year statute of limitations).[8]

*Counts III and IV.* Plaintiff lacks standing to assert Counts III and IV as currently pleaded, because both are generalized grievances. A "generalized grievance shared in substantially equally measure by all or a large class of citizens" is insufficient to establish the type of particularized injury necessary for Article III standing. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975). "A citizen cannot seek judicial relief simply to vindicate a belief in the need for better, or even lawful, conduct by the government or public officials." *Fabics*, 2015 WL 5167153, at *6. Nor can standing be "predicated on the right, possessed by every citizen, to require that the Government be administered according to law," because "[s]uch claims amount to little more than attempts to employ a federal court as a forum in which to air . . . generalized grievances about the conduct of government." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 482 (1982).

Here, Count III is premised on the contention that Cedar Grove's zoning scheme does not observe the "United Nations symposium of Habitat 2," which provides a right to a "habitat." (*See* Compl. ¶ 46). According to Plaintiff, a habitat is "where you can be all you can be." (D.E. No. 12 at 17–18). Even assuming this is true, and even ignoring the fact that Plaintiff has not resided in Cedar Grove since she left high school, there is no recognized constitutional right based upon the "international concept of a Habitat." At best, the allegations in Count III merely provide a generalized grievance about the zoning scheme used by Cedar Grove. *See, e.g.*, *Heine*, 2017 WL 3981135, at *15–16 (dismissing a similar claim raised against various New Jersey municipalities because it was a generalized grievance).

---

[8]     Additionally, it would likely also be *Heck*-barred, as a determination in favor of Plaintiff's present claim would necessarily imply that the conviction was improper. *See Heck v. Humphrey*, 512 U.S. 477 (1994).

Count IV is premised on a similar generalized grievance about Cedar Grove's zoning scheme. Plaintiff claims that Cedar Grove's development is "exclusionary" as it does not permit individuals like Plaintiff—i.e, "artists" or individuals who work "in the trades" (D.E. No. 12. at 4 & 16)—to maintain a mixed-use residences in the town. (*See* Compl. ¶¶ 22–23 & 48). And she maintains that new development near the Hilltop Reservation has caused the displacement of wildlife, which in turn has somehow caused damage to the properties of unnamed residents in the surrounding area. (Compl. ¶ 49). Tellingly, nowhere does Plaintiff allege that this activity has caused damage to *her own* property. (*See id*.).

As alleged, then, Plaintiff lacks any standing to air her grievances about Cedar Grove's so-called "narrow-minded" and "exclusionary" zoning scheme, even if it does not recognize the concept of a "habitat," and even if the new development has caused damage to the properties of unnamed individuals not properly before this Court. *See Fabics*, 2015 WL 5167153, at *6. Thus, these claims must be dismissed.

**IV.     Conclusion**

For the foregoing reasons, the court GRANTS Cedar Grove's motion and dismisses Plaintiffs' Complaint *without prejudice*.[9] An appropriate Order accompanies this Opinion.

*s/Esther Salas*<br>
**Esther Salas, U.S.D.J.**

---

[9] Because the Complaint fails to state a claim under Rule 12(b)(6), the Court also dismisses the Complaint against the remaining Defendants. *See Estate of Fabics*, 674 F.App'x. at 210 (stating that "dismissal of the entire action was warranted regardless of who had answered or moved to dismiss the complaint" where the complaint fails to comply with Rule 12(b)(6)); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs.").