**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELLEN HEINE,<br><br>    Plaintiff,<br><br>    v.<br><br>TOWNSHIP OF CEDAR GROVE, *et al.*,<br><br>    Defendants. | Civil Action No. 18-0441 (ES) (CLW)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is defendant Township of Cedar Grove's ("Cedar Grove") unopposed[1] motion to dismiss *pro se* plaintiff Ellen Heine's ("Plaintiff") Amended Complaint (D.E. No. 18 ("Am. Compl.")). (D.E. No. 22). The Court has considered the relevant submissions and decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). Subject matter jurisdiction is proper under 28 U.S.C. § 1331 based upon Plaintiff's assertion of federal claims. (*See* Am. Compl. at 1). For the reasons stated herein, the Court GRANTS Cedar Grove's motion to dismiss and dismisses this action *with prejudice*.

---

[1]  Cedar Grove filed its motion on April 29, 2019, which was returnable on June 3, 2019. (*See* D.E. Dated 04/30/2019). Although Plaintiff's opposition was due by May 20, 2019, Plaintiff did not file an opposition or request any extensions. On September 4, 2019, more than three months after her deadline had passed, Plaintiff filed her opposition, along with a request that the Court accept the same "as within time." (D.E. Nos. 26, 27 & 27-1). Plaintiff provides no explanation, much less any good cause, why she waited over 100 days after missing her filing deadline to submit her opposition. And although Plaintiff is *pro se*, that is not an excuse for outright ignoring the Federal Rules of Civil Procedure. *See, e.g.*, *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (noting that *pro se* litigants "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them."). Accordingly, the Court declines to consider Plaintiff's untimely response and decides the instant motion as unopposed.

1

**I.     Background**

The Court assumes the parties' familiarity with the underlying facts of this case and intends this Opinion to be read in conjunction with its prior Opinion and Order. (*See* D.E. Nos. 16 & 17).

Previously, the Court dismissed Plaintiff's original complaint *without prejudice* for failure to state a claim under Rule 12(b)(6). (D.E. No. 16 at 15). Particularly, the Court dismissed the Section 1983 claims for failure to allege the existence of an unlawful policy or custom as the proximate cause of the claimed constitutional violations. (*Id.* at 11). The Court also dismissed the Section 1985 claim since Plaintiff did not allege that "Defendants acted in concert, or that there was an understanding or agreement to conspire against Plaintiff." (*Id.* at 12).

The Amended Complaint raises seven counts against Cedar Grove, the Office of Probation Services, Rashad Shabaka-Burns as director of the Office of Probation Services, the Passaic County Probation Office, Dawn Moody as Chief of Probation Officer, Christine Dye as president of the Cedar Grove Board of Education, Joseph Cicala as mayor of Cedar Grove, Judge Nicholas S. Brindisi, and the Attorney General of the State of New Jersey (collectively, "Defendants"). (*See generally* Am. Compl.). Plaintiff asserts claims under 42 U.S.C. §§ 1983 and 1985 for alleged violations of her First Amendment right to free expression, Fifth Amendment right to property, and Eighth Amendment protection against cruel and unusual punishments. (*See id.* at 2–12). These claims largely rely on the same disjoined and confusing allegations asserted in the original complaint. (*Compare* Am. Compl., *with* D.E. No. 1).

**II.    Legal Standard**

To state a claim, a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In assessing a Rule 12(b)(6) motion, "[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference drawn therefrom." *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir.1992)). But a reviewing court does not accept as true the complaint's legal conclusions. *See Iqbal*, 556 U.S. at 678. A court therefore must first separate a complaint's facts from its legal conclusions and then assess whether those facts raise a plausible claim for relief. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211–12 (3d Cir. 2009).

Relevant here, "[a] document filed *pro se* is 'to be liberally construed' . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Yet there are limits to our procedural flexibility" when it comes to *pro se* litigants. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). *Pro se* litigants are not relieved of the obligation to plead enough factual matter to meet Rule 8(a)(2)'s plausibility standard. *See Franklin v. GMAC Mortg.*, 523 F. App'x 172, 172–73 (3d Cir. 2013); *D'Agostino v. CECOMRDEC*, No. 10-4558, 2010 WL 3719623, at *1 (D.N.J. Sept. 10, 2010) ("The Court need not, however, credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'"). A litigant's *pro se* status likewise does not relieve him or her of the obligation to "clearly and specifically" identify which claims pertain to which

3

defendants. *Pushkin v. Nussbaum*, No. 12-0324, 2013 WL 1792501, at *4 (D.N.J. Apr. 25, 2013).

**III. Discussion**

    **A. Section 1983 Claims**

Section 1983 imposes civil liability upon "any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004). The Amended Complaint asserts that Defendants violated Plaintiff's First, Fifth, and Eighth Amendment rights, but the Amended Complaint does not provide factual allegations that would support any such claims.

For instance, the Amended Complaint appears to assert that Plaintiff's right to "free expression in the home" was violated. (Am. Compl. at 5, ¶ 1 & at 11, ¶ 3). But Plaintiff provides no factual allegations describing what exactly her expression or speech was, how Defendants prevented that speech, or how exactly her First Amendment rights were violated at all. (*See generally id.*). Nor do the allegations give rise to the inference that Defendants retaliated against Plaintiff for any constitutionally protected conduct in a way that would deter a person of ordinary firmness from exercising said rights. *See Conard v. Pa. State Police*, 902 F.3d 178, 183 (3d Cir. 2018) (outlining elements for a First Amendment retaliation claim). Thus, Plaintiff's failure to "identify the exact contours of the underlying right said to have been violated," *see Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998), and to allege anything more than "threadbare recitals" and "blanket assertion[s]," *Twombly*, 550 U.S. at 556 n.3, is fatal to her Section 1983 First Amendment claim.

Similarly, Plaintiff appears to assert that her Fifth Amendment right to property was violated. (Am. Compl. at 5, ¶ 1). But the Amended Complaint provides no factual allegations that

4

would give rise to the inference that Plaintiff's property was subject to a taking or condemnation. And while Plaintiff asserts that the municipal court required Plaintiff to provide an address different from her Paterson property for purposes of completing her probation (Am. Compl. at 5, ¶ 4 & at 6, ¶ 8), nowhere does she allege that the judge or any defendant deprived her of all or substantially all the beneficial use of her Paterson property. *See In re 106 N. Walnut, LLC*, 447 F. App'x 305, 308 (3d Cir. 2011) (holding that a property owner is only entitled to recover on an inverse condemnation claim if the government action deprives him of all or substantially all of the beneficial use of the property); *see also Williams v. USA*, No. 18-14455, 2018 WL 4929390, at *5 (D.N.J. Oct. 11, 2018) (dismissing Fifth Amendment takings claim when the plaintiff failed to allege whether the government took her land from her). Thus, the Amended Complaint does not allege a violation of the Fifth Amendment right to property that is facially plausible.

Finally, Plaintiff attempts to assert a claim for violation of her Eight Amendment protection against cruel and unusual punishments. (Am. Compl. at 5, ¶ 1). But again, there is absolutely no cognizable or comprehensible factual allegation in the entire Amended Complaint that Plaintiff was ever subject to a cruel or unusual punishment. Rather, it appears that Plaintiff's Eight Amendment claim is premised on the fact that her trespass charge resulted in a sentence of probation, which if violated, *could* result in a term of incarceration. (*Id.* at 5, ¶¶ 2 & 4). Plaintiff fails to show, however, that this punishment included "elements of severity, arbitrary infliction, unacceptability in terms of contemporary standards, or gross disproportion." *Presley v. Morrison*, 950 F. Supp. 1298, 1301 (E.D. Pa. 1996) (quoting *Ingraham v. Wright*, 430 U.S. 651, 658 (1977); *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (noting that a punishment is cruel and unusual if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society," or "involve[s] the unnecessary and wanton infliction of pain"). Thus, Plaintiff fails to

5

present "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678.

Accordingly, Plaintiff does not actually allege a violation of any cognizable constitutional right. Rather, the crux of Plaintiff's complaint is her grievance with "the narrowly envisioned zoning scheme" of Cedar Grove, which does not observe the international concept of a habitat and "has never offered housing opportunities for individuals like [Plaintiff]." (*See, e.g.*, Am. Compl. at 4, ¶ 22 ("[T]he individuals that represent and interpret municipal ordinances and policies such as the municipal court officials have not considered that there should be any housing for individuals such as [Plaintiff]."); *id.* ¶ 19 ("Cedar Grove has zoning schemes that are different from the zoning schemes in Paterson where [Plaintiff] lived."); *id.* at 5–6, ¶¶ 5–8 & at 11–12, ¶¶ 3–5 (alleging that Judge Brindisi is a participant "in the thinking that gave rise to the ordinances and zoning scheme," because he has presided over many ordinance violation matters and has demonstrated a "deliberate indifference to the possibility of diverse lifestyles and [an individual's] expression in the home"); *id.* at 7, ¶ 5 (asserting that "[t]he actions of the Office of Probation Services display a deliberate indifference to the issues of diversity in housing and housing access and housing needs for individuals who are on probation" because the Office does not "offer information or avenues to access assistance for housing and homelessness prevention"); *id.* ¶ 6 (alleging that the "Office of Probation Services" provides "a Non-specific description of 'what is a house' so that their employees and the Courts can make interpretations that are detrimental to their probationers," allowing exclusionary housing standards that do not accept "diverse lifestyles and homes" and that are not in conformity with "the more generalized international concept off [sic] what a home is"); *id.* at 8, ¶ 9 (asserting that the actions by the Passaic County Probation Office demonstrates a complete indifference to zoning variations); *id.* at 10–11, ¶¶ 3–11 (asserting

that Cedar Grove's governing body has implemented ordinances and zoning schemes that do not recognize the concept of a "habitat," and that the town's continued development has conformed to narrow concepts of zoning, excluding individuals like Plaintiff).

At best, then, the allegations in the Amended Complaint merely provide a generalized grievance about Cedar Grove's zoning scheme and failure to recognize the concept of a habitat or "diverse lifestyles and homes." But again, no such constitutional right exists (*see* D.E. No. 16 at 14–15), and as the Court has told Plaintiff numerous times, such generalized grievances about the conduct of the municipal government does "not establish the kind of particularized injury necessary for Article III standing," *see, e.g.*, *Heine v. Dir. Of Codes & Standards*, No. 15-8210, 2017 WL 3981135, at *16 (D.N.J. Sept. 11, 2017), *aff'd sub nom. Heine v. Bureau Chief Div. of Fire & Safety*, 765 F. App'x 816 (3d Cir. 2019). Consequently, Plaintiff fails to allege any cognizable Section 1983 claim upon which relief may be granted.

### B.  *Monell* Liability

Plaintiff's claims against Cedar Grove must also be dismissed because the Amended Complaint fails to allege sufficient facts to state a plausible claim under *Monell v. Department.of Social Services*, 436 U.S. 658 (1978). "When a suit against a municipality is based on [Section] 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)). In other words, "a local government may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents," *Monell*, 436 U.S. at 694, but "it can be held responsible as an entity when the injury inflicted is permitted under its adopted policy or custom," *Beck*, 89 F.3d at 971.

To establish municipal liability the plaintiff must: (i) demonstrate the existence of an unlawful policy or custom; (ii) that she suffered a deprivation of the rights, privileges, or immunities secured by the Constitution or laws of the United States; and (iii) that the policy or custom was the proximate cause of the alleged deprivation. *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

Here, as with the prior complaint, Plaintiff fails to allege sufficient facts to show the existence of a policy or custom that was the proximate cause of any alleged deprivation of her constitutional rights. In the prior Opinion the Court noted that:

> "[T]hese *Monell* claims fail to allege the existence of an unlawful policy or custom which was the proximate cause of the claimed Fifth and Eighth Amendment violations. That is, Plaintiff does not identify a policy or custom implemented by Cedar Grove that requires the municipal judge to only use the local ordinances, ignoring the ordinance of the municipality where the property in question is located. Nor has Plaintiff alleged that the judges at Cedar Grove Municipal Court have a common practice or custom of disregarding the relevant zoning ordinances of other municipalities, and that therefore, Cedar Grove has shown a deliberate indifference to the known or obvious consequences of such actions. Nor has Plaintiff alleged that the municipal judge's decision was the act of a policymaker who possess final authority to establish municipal policy in that area."

(D.E. No. 16 at 11 (citations omitted)). Plaintiff's Amended Complaint largely regurgitates the deficient allegations asserted in the prior dismissed complaint. At most, Plaintiff adds an additional assertion that her First Amendment right was also somehow violated (*see* Am. Compl. at 5), but still without sufficient factual matter to meet the Rule 8(a) pleading requirements.

Instead, Plaintiff again asserts that "Cedar Grove had the custom and practice to ignore the options for careers in construction and the trades for women," because throughout her time as a student in Cedar Grove's public schools she never received career counseling about opportunities in "the construction trades." (Am. Compl. at 9, ¶¶ 2–9). But the Amended Complaint fails to

provide any factual allegations that would connect such a custom or practice to any alleged deprivation, and as the Court previously explained, "the Court sees no connection between that childhood experience and how the municipal court judge made his determination more than 40 years later in September 2016." (D.E. No. 16 at 11 n.7).

Plaintiff also again relies on the assertion that there is an unconstitutional custom or practice because the municipal judge applied Cedar Grove's zoning ordinances (instead of Paterson's zoning ordinances) when determining whether Plaintiff's Paterson address was proper for purposes of probation, and because the judge is very familiar with Cedar Grove's zoning scheme and ordinances. (*See, e.g.*, Am. Compl. at 5–6, ¶¶ 5–9 & at 12, ¶ 5). But Plaintiff still fails to provide any factual allegations to show that Cedar Grove somehow influenced the municipal judge, or that there is a systematic practice of ignoring other township's zoning ordinances that is so well-settled and permanent as to virtually constitute the law. *See Bielevicz*, 915 F.2d at 850. And as the Court emphasized before, an isolated mistake or mere negligence by some municipal agent is not enough to satisfy the *Monell* standard. (*See* D.E. No. 16 at 12 (citing *Solomon v. Phila. Hous. Auth.*, 143 F. App'x 447, 457 (3d Cir. 2005); *Adams v. City of Atl. City*, 294 F. Supp. 3d 283, 301 (D.N.J. 2018)).

Because Plaintiff fails to address any of the deficiencies outlined by the Court's prior Opinion and Order (*see* D.E. Nos. 16 & 17), the Section 1983 claims are dismissed *with prejudice*. *See, e.g.*, *Brown v. Cantineri*, No. 14-6391, 2017 WL 481467, at *2 (D.N.J. Feb. 6, 2017) ("Because I have already given [the plaintiff] one opportunity to amend, this dismissal is with prejudice."); *accord Foster v. Raleigh*, 445 F. App'x 458, 460 (3d Cir. 2011); *LeJon-Twin El v. Marino*, No. 16-2292, 2017 WL 1591856, at *4 (D.N.J. Apr. 28, 2017); *Venditto v. Vivint, Inc.*, No. 14-4357, 2015 WL 926203, at *15 (D.N.J. Mar. 2, 2015).

### C. Section 1985 Claim

The Amended Complaint also reasserts Plaintiff's Section 1985(3) claim. (*See* Am. Compl. at 2). To properly allege a civil rights conspiracy under 42 U.S.C. § 1985(3), Plaintiff must allege the existence of "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Kirkland v. Dileo*, 581 F. App'x. 111, 118 (3d Cir. 2014) (quoting *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006)). "The factual allegations supporting the conspiracy claim may not be generalized or conclusory." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997); *see also Schlichten v. Cnty. of Northampton*, 279 F. App'x. 176, 179 (3d Cir. 2008) (requiring a conspiracy to be pled with specificity). Thus, mere conclusory allegations that a conspiracy exists will not survive a motion to dismiss. *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 605 (D.N.J. 2002). Instead, "a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Ivan v. Cnty. of Middlesex*, 595 F. Supp. 2d 425, 484 (D.N.J. 2009).

Here, Plaintiff again fails to allege facts sufficient to support any of these elements. (*See generally* Am. Compl.). For instance, the Amended Complaint does not identify the period of the conspiracy, its object, or the specific actions taken by the conspirators in furtherance of that purpose. (*See generally* Am. Compl.). Similarly, as with the prior complaint, Plaintiff does not allege any facts to show that there was a meeting of the minds among the named Defendants. *See Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008). Instead, Plaintiff only provides legal conclusions devoid of any factual support or specificity. (*See, e.g.*, Am. Compl. at 6, ¶ 9 (asserting

that Judge Brindisi's actions and "the Probation Office's strict adherence to the necessity of probationers to provide what was considered a 'standard home' created a conspiracy-like environment"); *id.* at 12, ¶ 1 ("The actors, who are the defendants, have worked together with intent in the pursuit of their tasks which have resulted in a discriminatory animus against the Plaintiff with reference to housing."); *id.* ¶ 2 (asserting that the various actions by the different Defendants "is amenable to the characterization of a 'conspiracy'"). And while the Court is required to give Plaintiff's factual allegations "every favorable inference to be drawn therefrom," *Malleus*, 641 F.3d at 563, it is Plaintiff's burden to allege sufficient facts to create a cognizable claim, *see Iqbal*, 556 U.S. at 678; *Franklin*, 523 F. App'x at 173. Thus, the Amended Complaint plainly fails to allege a plausible civil rights conspiracy claim.

And because the Amended Complaint completely fails to cure the deficiencies noted in the original complaint, Plaintiff's Section 1985 claim is dismissed *with prejudice*. *See, e.g.*, *Brown*, 2017 WL 481467, at *2; *Foster*, 445 F. App'x at 460; *LeJon-Twin El*, 2017 WL 1591856, at *4; *Venditto*, 2015 WL 926203, at *15.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS Cedar Grove's motion and dismisses Plaintiffs' Amended Complaint *with prejudice*. And because the Amended Complaint fails to plead any plausible claim, the Court dismisses this matter against all remaining defendants. *See Estate of Fabics v. City of New Brunswick & its Agents*, 674 F. App'x 206, 210 (3d Cir. 2016) (stating that "dismissal of the entire action was warranted regardless of who had answered or moved to dismiss the complaint" where the complaint fails to comply with Rule 12(b)(6)). An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**